United States District Court
Eastern District of Michigan

Damon Rucker,

    Petitioner,

-vs-

Eric Rardin, Warden,

    Respondent.

_____/

Case No. 25-cv-10255

Honorable Terrence G. Berg

## Response to Petition for Writ of Habeas Corpus

The Court should deny Damon Rucker's petition for a writ of habeas corpus under 28 U.S.C. § 2241. The Bureau of Prisons has correctly calculated his Conditional Placement Date under the First Step Act.

Respectfully submitted,

Jerome F. Gorgon, Jr.
United States Attorney

s/ Jessica V. Currie
Jessica V. Currie
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9531
jessica.currie@usdoj.gov

Dated: May 9, 2025

United States District Court
Eastern District of Michigan

Damon Rucker,

    Petitioner,

Case No. 25-cv-10255

-vs-

Honorable Terrence G. Berg

Eric Rardin, Warden,

    Respondent.

_____/

# Brief in Support of Response to Petition for Writ of Habeas Corpus

## Issue

Should Rucker's petition for a writ of habeas corpus under 28 U.S.C. § 2241 be denied because the Bureau of Prisons correctly calculated his Conditional Placement Date under the First Step Act?

## Background

Rucker is serving a 310-month sentence for attempted possession with intent to distribute cocaine under 21 U.S.C. § 846 and witness retaliation under 18 U.S.C. § 1513(b)(1). He is currently housed at FCI Milan, and his full term expires on May 24, 2038. (Ex. 1, Burnett Decl., ¶¶ 4, 11).

2

The First Step Act created a new type of time credits for prisoners, separate and apart from good time credits. Eligible inmates who successfully complete "evidence-based recidivism reduction programs" and other "productive activities" can earn First Step Act time credits (FTCs) toward early transfer to supervised release or prerelease custody. 18 U.S.C. § 3632(a), (d)(4); (Ex. 1, Burnett Decl., ¶ 5).

As of April 2, 2025, Rucker had earned a total of 1,095 FTCs. Applying 365 of those FTCs toward early transfer to supervised release (the statutory maximum), and accounting for earned and projected good time credits, Rucker's "Projected Release Date" is July 30, 2033. (Ex. 1, Burnett Decl., ¶¶ 7, 11).

Under the Second Chance Act, the Bureau of Prisons has the discretion to refer an inmate for prerelease custody up to a year before his release date. The potential for this is reflected in Rucker's "SCA Conditional Placement Date" of July 30, 2032. (*Id.*, Att. 3, FSA Time Credit Assessment).

As of April 2, 2025, Rucker had a remaining balance of 730 FTCs that may be applied toward early transfer to prerelease custody. For planning purposes, in addition to accounting for already-earned FTCs,

3

the Bureau of Prisons' projection method accounts for FTCs that an inmate could earn in the future and have applied toward early transfer to prerelease custody in a best-case scenario. That's how Rucker's "FSA Conditional Placement Date" of June 26, 2029, was determined. (*Id.*, ¶¶ 9–11 & Att. 3, FSA Time Credit Assessment).

Rucker claims that the Bureau of Prisons has incorrectly calculated his FSA Conditional Placement Date. After exhausting his administrative remedies, Rucker petitioned for a writ of habeas corpus under 28 U.S.C. § 2241. He claims that the projection methodology should account for future FTCs that he could earn after placement in prerelease custody. (Petition, ECF No. 1, PageID.1–9). As a remedy, he seeks a judicial determination to this effect, which would yield a projected placement date of December 9, 2025. (*Id.*, PageID.11). He does not claim entitlement to immediate transfer to prerelease custody.

## Argument

**The Bureau of Prisons correctly calculated Rucker's Conditional Placement Date under the First Step Act.**

A federal inmate may seek a writ of habeas corpus under 28 U.S.C. § 2241 to challenge the manner in which his sentence is being executed, including issues relating to time credits. *Capaldi v. Pontesso,*

4

135 F.3d 1122, 1123 (6th Cir. 1998); *Hernandez v. Lamanna*, 16 F. App'x 317, 320 (6th Cir. 2001).

The time credit issue here involves the First Step Act, which directed the Attorney General to establish an incentive system for inmates to participate in evidence-based recidivism-reduction programs and productive activities to earn FTCs toward early transfer to supervised release or prerelease custody. *See* 18 U.S.C. §§ 3632(a), (d)(4); (Ex. 1, Burnett Decl., ¶ 5). An eligible inmate can earn 10 FTCs "for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities." 18 U.S.C. § 3632(d)(4)(A)(i). An inmate can earn an additional 5 FTCs during that period if (1) his recidivism-risk rating is minimum or low and (2) his risk of recidivism has not increased for two consecutive PATTERN assessments. 18 U.S.C. § 3632(d)(4)(A)(ii); 28 C.F.R. § 523.42(c)(2).

FTCs are "auto-calculated based on 30-day increments in earning status." (Ex. 1, Burnett Decl., ¶ 6 (quoting BOP Program Statement 54010.01, CN)). Inmates may lose FTCs for violating program requirements or as a sanction for a prohibited act. 28 C.F.R. § 523.43(a). And inmates who refuse programming, or have programming

5

interrupted for certain reasons, are not "successfully participating" and will not earn FTCs during those periods. (Ex. 1, Burnett Decl., ¶ 6). Indeed, Rucker has not always been in earning status, and his earning rate has varied between 10 days and 15 days. (*Id.*, Att. 3). Because of possibilities like this, "credits are only earned by actual completion or participation in anti-recidivism programming, not the speculative participation in future programming." (*Id.*, ¶ 6).

A maximum of 365 earned FTCs may be applied toward an inmate's early transfer to supervised release. 18 U.S.C. § 3624(g)(3); 28 C.F.R. § 523.44(d). Any remaining earned FTCs may be applied toward early transfer to prerelease custody. 28 C.F.R. § 523.44(c); (Ex. 1, Burnett Decl., ¶ 7). But before any earned FTCs are applied, an inmate must have (1) earned FTCs in an amount equal to his remaining term of imprisonment, (2) shown through periodic risk assessments a demonstrated reduction in recidivism risk or maintained a low or minimum risk during his incarceration, and (3) had the remainder of his term computed under applicable law. 18 U.S.C. § 3624(g)(1); 28 C.F.R. §§ 523.44(b)-(d); (Ex. Burnett Decl., ¶ 8).

6

For planning purposes only, the Bureau of Prisons projects an inmate's future earning potential, and the method for doing so assumes a best-case scenario. But the projections are "subject to change" and "will be adjusted if the inmate's PATTERN score changes or if the inmate enters non-earning status." BOP Program Statement 54010.01. The conditional dates on a credit worksheet do not indicate that the inmate has already earned future potential FTCs or that he or she has satisfied the requirements to have them applied. (Ex. 1, Burnett Decl., ¶ 9). By statute, only "earned" FTCs "shall be applied," and only if all criteria are satisfied at the appropriate time. 18 U.S.C. § 3632(d)(4)(C); 18 U.S.C. § 3624(g)(1).

Rucker argues that his FSA Conditional Placement Date should account for future FTCs that he may earn *after* his placement in prelease custody, should he participate in anti-recidivism programming while at a residential reentry center. But that argument assumes, incorrectly, that FTCs can be applied (pre-placement) before they are earned (post-placement). The statute specifically forbids that from happening—only credits already "earned" can be "applied." 18 U.S.C. § 3632(d)(4)(C). Excluding the impossible does not render a projection

7

method flawed. Rucker's Conditional Placement Date was properly calculated based on a best-case scenario that accounts for all FTCs that he could possibly earn *and* have applied toward early transfer to prerelease custody.

Rucker points to Program Statement 5410.01, which says that an inmate's Projected Release Date is calculated "assuming that an inmate will remain in earning status throughout his or her sentence, including while in prerelease custody." But that policy does not carry the force that Rucker suggests, and another judge in this district recently rejected the very same argument. *Cox v. Rardin*, No. 24-cv-10676, 2025 WL 495342 (E.D. Mich. Feb. 13, 2025) (McMillion, J.).

First, as observed in *Cox*, the policy states that the projection is "conditional" and "subject to change" because an inmate will not necessarily remain in earning status. *Id.* at *2. The projection "is not a set, immutable date of release because it does not discharge an inmate's obligations to both actually earn the FTCs that the [Projected Release Date] is based upon and satisfy other statutory requirements for FTC application," as the statue demands. *Id.* (citing 18 U.S.C. § 3624(g)(1)).

8

As further explained in *Cox*, an inmate is not entitled to habeas relief based on policy violation alone, because noncompliance with policy does not establish a violation of federal law. *Id.* at *3 (collecting cases). Policies such as Program Statement 5410.01 "are merely internal interpretive rules and do not create enforceable rights or obligations." *Id.* (cleaned up); *see also Young v. Eischen*, 23-cv-3227, 2024 WL 418702, at *3 (D. Minn. Jan. 3, 2024), *report and recommendation adopted*, 23-cv-3227, 2024 WL 416445 (D. Minn. Feb. 5, 2024).

At the heart of Rucker's complaint is that Program Statement 5410.01 creates a scenario where an inmate can earn FTCs while in prerelease custody but never benefit from them. (Petition, ECF No. 1, PageID.6). But as explained in *Cox*, that scenario is still "supported by statute," and merely showing that a policy may be "unwise and unimplementable" does not mean that the Bureau of Prisons failed to follow it. *Cox*, 2025 WL 495342, at *5. Moreover, because "the statute makes clear that only earned FTCs can be applied," and earned FTCs will only be applied if certain other statutory requirements are met, Rucker has not shown that any error in calculating his projected FTCs violates the First Step Act. *Id.* at *5–6.

Even if Rucker could show that the Bureau of Prisons' projection methodology is contrary to statute, he alleges "an earliest possible prerelease placement date of December 9, 2025," which is more than six months from now. (Petition, ECF No. 1, PageID.11). He does not yet claim entitlement to immediate transfer to prerelease custody. Thus, in addition to the other flaws in his petition, his request for habeas relief is premature. *See Cox*, 2025 WL 495342, at *6; *Henny v. Segal*, 23-cv-448, 2024 WL 4980951, at *6 (D. Minn. Oct. 28, 2024), *report and recommendation adopted*, 23-cv-448, 2024 WL 4979659 (D. Minn. Dec. 4, 2024)  (petition "premature" where inmate "is not yet entitled . . . to the application of her credits").

## Conclusion

The petition for a writ of habeas corpus should be denied.

Respectfully submitted,

Jerome F. Gorgon Jr.
United States Attorney

/s/ Jessica Currie
Jessica Currie
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9531
jessica.currie@usdoj.gov

Dated: May 9, 2025

## Certificate of Service

I certify that on May 9, 2025, I electronically filed the Response to Petition for Writ of Habeas Corpus and Brief in Support with the Clerk of the Court using the ECF system and that an employee of the U.S. Attorney's office mailed a copy via the United States Postal Service to the following non-ECF participant:

>Damon Rucker, Reg. #44137-424
>Milan FCI
>P.O. Box 1000
>Milan, MI 48160

/s/ Jessica Currie
Assistant United States Attorney