6

7/17/25

FILED
JUL 25 2025
CLERK'S OFFICE
DETROIT

Damon Rucker 44137-424
FCI Milan
P.O. Box 1000
Milan, MI 48160

Case No. 25-10255

Honorable Terrence G. Berg

    I write in regards to the B.O.P handling of a order passed down by the director of B.O.P. Its very concerning and it seem you and your fellow judges are the only ones the B.O.P can't get around. We receive legal news letters from lawyers through the corrlincs system. These news letters gives us updated cases and information going on BOP wide. Derek Gilna is one of the lawyers whom provide major info to inmates. I am not subscribed to Mr. Gilna but I was able to make a copy of the recent news letter from a fellow inmate. I redacted his name so that the institution did not retaliate against him.

    As you will see in highlight the effort that is said the B.O.P are taking to create the buearacratic inertia that the director opposes! Your Honor I understand I may not had needed to send this letter and legal news letter but I know you will have to make Milan do what the law says or else it won't get done. With me having a FSA & SCA date of Dec 9th or sooner, I was suppose to have gotten put in for SCA last month (June) but that has not happened. I ask for mercy on the court to force B.O.P and F.C.I Milan to comply with the law and expectations of the Director of the B.O.P. Thank you in advance

Damon Rucker 44137-424
P.O. Box 1000
Milan, MI 48160

TRULINCS 

---

FROM:
TO:
SUBJECT: Federal Legal News 07-13-25
DATE: 07/14/2025 05:36:04 AM

Federal Legal News is brought to you by ConTXT, a messaging service that makes it even easier to stay in touch with your loved ones. To learn more, send an invite to info@gocontxt.com.

Sentencing Commission Sets Hearing on Retroactivity; Newest Corrlinks Email Restriction Constitutes First Amendment Violation; Bureau's Bureaucrats Continue Obstruction of Director's First Step/Second Chance Memo; Deputy Director at Coleman; California Judge Rejects Newest Bureau Defense Strategy in Prisoner FSA 2241 Filings.

By Derek Gilna, Director of Research

    The United States Sentencing Commission (USSC) will hold a hearing this Wednesday, July 16, 2025, to gather testimony from invited witnesses concerning whether to designate as retroactive certain 2025 guideline amendments. One such amendment is 18 U.S.C. § 3582(c):"in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(o), upon motion of the defendant   the court may reduce the term of imprisonment, after considering the factors set forth in section 3553 (a) to the extent that they are applicable "

    Another amendment awaiting the decision on retroactivity is one affecting career offenders: "Only under limited circumstances may a defendant sentenced pursuant to the career offender guideline in §4B1.1 be eligible for a sentence reduction. Section 4B1.1 requires that the greater of the offense level from that section or the offense level applicable to the underlying offense of conviction be applied. Thus, amendments that reduce the offense level of the underlying offense would not, in the ordinary course, reduce the defendant's guideline range. Without a reduction in the Guideline range " the career offender designation would not be changed.

    In the area of supervised release, "While section 3582(c)(2) does not allow the court to reduce a term of supervised release, 18 U.S.C. § 3583(e)(1) permits the court to "terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release . . . if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice."

    The federal Bureau of Prisons, always a publicity-shy agency, has been in the uncomfortably bright lights of public scrutiny since its institutional shortcomings were exposed during the COVID-19 crisis. Even mainstream media, who never much cared about prisoner issues before then, have highlighted the abysmal living conditions, shameful medical treatment, expired food, overcrowding, system-wide sexual assaults, and the culture of unaccountability that have existed for decades. Sadly, those prison staffers that actually take their duties as public servants seriously appear to be outnumbered by those that seem to take perverted pleasure in delaying prisoner release dates. These latter individuals appear to be outraged that their unprofessional conduct is exposed on a weekly basis to not only the general public, prisoners' families, and legal professionals, but also to the prisoners themselves.

    This may serve to explain the newest, clearly unconstitutional restriction on CORRLINKS transmissions, which limits transmissions to ONE recipient. This follows the previously limitation of 12 recipients-down from 500-which was also designed to limit prisoner's communications with the outside world. In the closed prison universe, information is a valuable commodity. This enables cynical individuals within the Bureau to manipulate, via unfounded rumors and misdirection, prisoners who are then unable to make informed decision about possible sentence relief or early release. The only ones who benefit from this arrangement are those who are trying to hide their non-compliance with the Director's order to follow the law. Unfortunately, legal action might be necessary to reverse this clearly brazen attempt to censor journalists and legal professionals, not to mention charitable and religious organizations who also minister to prisoners via CORRLINKS.

    This censorship is also dangerous for prisoners who are vulnerable to sexual harassment or outright assault. We have already spotlighted Congressional investigation of retaliation against PREA complainants from Alderson, but this week saw new allegations from Tallahassee, where another woman appeared to have been retaliated against for filing a PREA complaint. When she tried to contact legal representatives, she got placed on "contact deletion program," which suspends phone and email privileges. Legitimate public servants have should have nothing to hide.

    Unfortunately, this culture of lack of accountability also extends to the executions of the Director's most recent FSA/SCA Memo. This pattern of non-compliance at some institutions is all too common, as noted from the women's facility at Bryan,

TRULINCS 

---

Texas: "Case Managers are still Teaming under the old, unlawful system and unlawfully tricking (prisoners) into signing for a half-way house date before their time has been applied and even when they are direct to home-confinement eligible. The Warden claimed the new mandate does not apply here and Unit Teams say they have nothing to do with the changes (or following the law) as they are waiting for changes and directions from RRM-Grand Prairie. One Unit Team Manager informed the unit that their 'dates would not change, so do not bother asking. And pray to whoever you pray to that you get to keep the date you already have instead of it getting taken.'"

   This from the men's facility at Milan: "I was also told (by my case manager that, 'there was no such guidance coming from the bureau and if there was it's not our business.' The higher ups here stated, 'Yeah, well, the BOP only put that memo out to shut Congress up but there is no such change.'"

   Hopefully, the Director can pull this together, and in the meantime, his new deputy, Joshua J. Smith, did a rare, largely unescorted tour of Coleman, where he listened to prisoners' complaints without staff interference. These were just some of the complaints aired, which are not unique to Coleman: "1. Inability and/or unwillingness of staff to properly place FSA and SCA time. 2. Widespread use of group punishment. 3. Seemingly institutionalized homophobia and racism exhibited by staff, as in not just a couple bad actors. 4. Environment of something resembling a partial lockdown. Remember this is a low. 5. Almost total lack of rehabilitate training. Our only vocational classes regularly in use are horticulture and culinary and i have been on both waiting lists for over 5 years, as an example. 6. 3 men to a room of roughly 80 square feet in violation of congressional mandate regarding housing space; they try to get around it by counting the total floor area of the unit."

   Unfortunately, it is often necessary for prisoners to file administrative remedies and a 2241 petition in federal court to obtain their proper FSA or Second Chance Act credits. Prisoners attempting to file without professional assistance face an uphill battle even if the FSA/SCA laws favor their situation, as the Bureau has long experience in defending these claims. We can assist with this complicated process.

   Notwithstanding, judges have become more sympathetic to prisoner appeals on this subject. Under the First Step Act, (FSA), Time Credits " shaii" be applied when incarcerated people earn them. The FSA makes this clear two separate times. First, in 18 U.S.C. § 3632(d)(4)(A), the FSA states that "[a] prisoner who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits .... " Second, in 18 U .S.C. § 3632(d)(4)(C),the FSA states that "[t]ime credits earned under this paragraph by prisoners who successfully participate in recidivism reduction programs or productive activities shall be applied toward time in prerelease custody or supervised release" and that "[t}he Director of the Bureau of Prisons shall transfer eligible prisoners into prerelease custody (emphasis added.)" Petitioner is clearly eligible for FSA credits and attaches hereto evidence thereof.

   As one federal judge explained in a 2021 case of O'Bryan v. Cox. 20-7582, (D of NJ , 8-25-2020), "[m]andatory words such as 'shall ' impose a duty and permissive words such as 'may ' grant discretion .... " Because Congress was clear in using the mandatory word "shall" in these instances, that court concluded, "no deference is to be accorded to the BOP position that it need do nothing with accrued time credits under the FSA until January 15, 2022." As the O'Bryan court noted, this is the only interpretation permitted by the " shall" heavy statute.

   Two cases that struck down the Bureau's attempts to limit FSA credits and halfway house placements are Yufenyuy v. Warden, where U.S. Magistrate Judge Andrea K. Johnstone, a federal judge in New Hampshire, ordered the BOP to apply the First Step Act time credits a federal prisoner, Austen Yufenyuy, had earned while in BOP custody from the date of sentencing, and 24- 3053-JWL United States District Court, District of Kansas, Woodley v. Warden, USP Leavenworth/ In this case the judge rejected the Bureau scheme of stating that no room was available at the halfway house.

   In Woodley, the court ruled: "No condition concerning bed availability is included among the requirements for eligibility under Section 3624(g), thus immediate placement in prerelease custody is required under Section 3632(d)(4)(C)." The statute uses mandatory 'shall' language. Multiple courts have held the BOP has no discretion to delay transfer of eligible prisoners to prerelease custody. See Doe v. Federal Bur. of Prisons, 2024 WL 455309 (S.D.N.Y. Feb. 5, 2024); Ramirez v. Phillips, 2023 WL 8878993 (E.D. Cal. Dec. 22, 2023); Komando v. Luna, 2023 WL 310580 (D.N.H. Jan. 13, 2023).

   Recent California federal court decision in McCaa v. Warden, FCC Victorville, 24cv2590, rejected the BOP's argument that it has sole discretion over halfway house transfers, contrary to FSA's clear language. The court held it has jurisdiction to review alleged violations of statutes, regulations, and the Constitution. See Rodriguez v. Copenhaver, 823 F.3d 1238, 1242 (9th Cir. 2016) (federal courts have jurisdiction when BOP acts "contrary to established federal law, violated the Constitution, or exceeded its statutory authority").

   Restrictive Bureau software has imposed even more restrictions on the number of transmissions that we can make,

TRULINCS 28014509 - HOGAN, MARTIN - Unit: MIL-A-A

----------------------------------------------------------------------------------------------------

FROM: Gilbert, Jack
TO: 28014509
SUBJECT: Federal Legal News 07-13-25
DATE: 07/14/2025 05:36:04 AM

Federal Legal News is brought to you by ConTXT, a messaging service that makes it even easier to stay in touch with your loved ones. To learn more, send an invite to info@gocontxt.com.

Sentencing Commission Sets Hearing on Retroactivity; Newest Corrlinks Email Restriction Constitutes First Amendment Violation; Bureau's Bureaucrats Continue Obstruction of Director's First Step/Second Chance Memo; Deputy Director at Coleman; California Judge Rejects Newest Bureau Defense Strategy in Prisoner FSA 2241 Filings.

By Derek Gilna, Director of Research

The United States Sentencing Commission (USSC) will hold a hearing this Wednesday, July 16, 2025, to gather testimony from invited witnesses concerning whether to designate as retroactive certain 2025 guideline amendments. One such amendment is 18 U.S.C. § 3582(c):"in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(o), upon motion of the defendant   the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable "

Another amendment awaiting the decision on retroactivity is one affecting career offenders: "Only under limited circumstances may a defendant sentenced pursuant to the career offender guideline in §4B1.1 be eligible for a sentence reduction. Section 4B1.1 requires that the greater of the offense level from that section or the offense level applicable to the underlying offense of conviction be applied. Thus, amendments that reduce the offense level of the underlying offense would not, in the ordinary course, reduce the defendant's guideline range. Without a reduction in the Guideline range " the career offender designation would not be changed.

In the area of supervised release, "While section 3582(c)(2) does not allow the court to reduce a term of supervised release, 18 U.S.C. § 3583(e)(1) permits the court to "terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release . . . if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice."

The federal Bureau of Prisons, always a publicity-shy agency, has been in the uncomfortably bright lights of public scrutiny since its institutional shortcomings were exposed during the COVID-19 crisis. Even mainstream media, who never much cared about prisoner issues before then, have highlighted the abysmal living conditions, shameful medical treatment, expired food, overcrowding, system-wide sexual assaults, and the culture of unaccountability that have existed for decades. Sadly, those prison staffers that actually take their duties as public servants seriously appear to be outnumbered by those that seem to take perverted pleasure in delaying prisoner release dates. These latter individuals appear to be outraged that their unprofessional conduct is exposed on a weekly basis to not only the general public, prisoners' families, and legal professionals, but also to the prisoners themselves.

This may serve to explain the newest, clearly unconstitutional restriction on CORRLINKS transmissions, which limits transmissions to ONE recipient. This follows the previously limitation of 12 recipients-down from 500-which was also designed to limit prisoner's communications with the outside world. In the closed prison universe, information is a valuable commodity. This enables cynical individuals within the Bureau to manipulate, via unfounded rumors and misdirection, prisoners who are then unable to make informed decision about possible sentence relief or early release. The only ones who benefit from this arrangement are those who are trying to hide their non-compliance with the Director's order to follow the law. Unfortunately, legal action might be necessary to reverse this clearly brazen attempt to censor journalists and legal professionals, not to mention charitable and religious organizations who also minister to prisoners via CORRLINKS.

This censorship is also dangerous for prisoners who are vulnerable to sexual harassment or outright assault. We have already spotlighted Congressional investigation of retaliation against PREA complainants from Alderson, but this week saw new allegations from Tallahassee, where another woman appeared to have been retaliated against for filing a PREA complaint. When she tried to contact legal representatives, she got placed on "contact deletion program," which suspends phone and email privileges. Legitimate public servants have should have nothing to hide.

Unfortunately, this culture of lack of accountability also extends to the executions of the Director's most recent FSA/SCA Memo. This pattern of non-compliance at some institutions is all too common, as noted from the women's facility at Bryan,

TRULINCS 

---

meaning that you might receive the newsletter any day of the week, depending upon your last name. To ensure your timely access to important information, add your family to our growing list of email subscribers, at dgilna1948@yahoo.com. This will permit us to send you to a new email address should your email be blocked by the institution. If your prison has been blocked, have your outside contacts email us at dgilna1948@yahoo.com to receive a new email portal for regular communications.

    Never quit, never surrender. Let not your heart be troubled.

Derek Gilna, Director of Research, JD, (De Paul Law School, 1975), MARJ, (Vermont Law School, 2020), Federal Legal Center, 133 W. Market, #171, Indianapolis, IN 46204; dgilna1948@yahoo.com (English newsletter and ALL inquiries, English or Spanish); federallc_esp@yahoo.com, Spanish newsletter, but NO inquiries. Once again, remember that when you leave space for us to reply, you are more likely to get a response. 58743776

DAMON L. RUCKER
NAME
44137-424
REG. NO.
FEDERAL CORRECTIONAL INSTITUTION
P.O. BOX 1000
MILAN, MICHIGAN 48160



METROPLEX MI 480
22 JUL 2025 AM 15 L

RECEIVED
JUL 25 2025
CLERK'S OFFICE
DETROIT

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
OFFICE OF THE CLERK
Theodore Levin United States Courthouse
231 WEST LAFAYETTE BLVD - Room 564
DETROIT, MICHIGAN 48226

46226-271833