5

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

FILED

NOV 12 2025

CLERK'S OFFICE
DETROIT

UNITED STATES of AMERICA

Plaintiff

CASE No: 25-10255

DAMON RUCKER

HON. TERRENCE G. BERG

AMEND MOTION

DEFENDANT, DAMON RUCKER, PROSE, HEREBY AMEND MOTION IN CORRECT CALCULATION OF FSA TIME CREDITS AND SUBMITTED FOR HALFWAY HOUSE/HOME CONFINEMENT. EXHIBIT A TO BE AMENDED WITH MOTION.

GONZALEZ V. HERRERA No. 24-2371 (9TH CIR. 2025) CONFIRM FSA ACCRUED TIME CREDITS CAN BE EARNED IN THE HALFWAY HOUSE/HOME CONFINEMENT AND CAN BE APPLIED TO REDUCING TIME IN CUSTODY AND/OR REDUCE SUPERVISED RELEASE, THEREFORE ALL PROJECTED ACCRUED TIME CREDITS, RUTHER IN A INSTITUTIONAL SETTING, HALFWAY HOUSE OR HOME CONFINEMENT SHALL BE APPLIED IN REDUCING AN ADULT IN CUSTODY (AIC) TIME. APPLYING THIS APPLICATION TO RUCKER WITH RUCKER PROJECTED ACCRUED TIME, WOULD PLACE RUCKER FSA DATE TO DECEMBER OF 2026. AFTER APPLYING SECOND CHANCE ACT (SCA) OF A YEAR WOULD THEN HAVE RUCKER COMMUNITY ELGIBLE DATE IN DECEMBER OF 2025.

YOUR HONOR I ASK THAT YOU FORCE THE B.O.P AND F.C.I MILAN TO DO WHAT IS LEGALLY AND MORALLY RIGHT BY GRANTING THIS MOTION WITH NO DELAYS.

11/5/25

44137-424

CASE No: 25-10255

*EXHIBIT A*

CASE NO.

SUBJECT: FLN 11-3-25
DATE: 11/04/2025 08:36:04 AM

Notice: Until the federal government lockdown ends and the promised new system for reinstituting mass emails of advocate newsletters begins, the frustrating process of sending newsletter by individual emails will persist. Feel free to individually request the newsletter and it will be sent in the reply.. Also advise us if you are available to post or pass out copies of the newsletter to increase circulation.

BOP Continues Twenty-Five Year Pattern of Abusive Medical Care; Why Aren't All Prisoners over the Age of 60 or with Serious Chronic Problems filing for Compassionate Release? Central Office Policy Collides with Institutional Roadblocks to proper FSA Calculations, Timely Release; Bugs Invade Alderson; Continue Fallout from MAT Failures; "Strawberry Danish Caper" Exposed; Important Case Deals with FSA Credits Application to Supervised Release.

By Derek Gilna, Director of Research

Although the new BOP Director and Assistant Director have made many improvements in operations, one area where they have had zero impact is the reform of BOP health care. That ad-hoc policy normalizes sub-standard staff behavior and treatment that would keep trial lawyers busy for decades if the current prison legal system was not an uneven playing field. This failure can not be blamed on the recent appointees, but it is time for the administration to reform this corrupt and cruel system.

Unfortunately, BOP (and federal government) waste and outright corruption are embedded in the current system. In the past two years, the FBI has raided and seized computers and documents at multiple institutions that have made the news (FCI Dublin, FMC Butner, FMC Carswell), as well as many that have not. Multiple investigations have revealed tens of thousands of cases of inadequate (or purposely overstated) medical treatment, covered up by a medical staff who is untroubled when they omit key information from prison medical charts, knowing that there is little risk of discovery or discipline. Of course, lack of staff and funding are key problems (numerous outside medical specialists and hospitals claim that the BOP does not pay them on a timely basis), but this neglect has been institutionalized for over two decades, and will never cease of its own volition.

Absent from any of this discussion is one word from either BOP-and DOJ-of their joint responsibility for this fiasco of death and suffering. Over the past years DOJ has unapologetically filed "threat to the community" defenses to compassionate release petitions filed by bedridden terminal cancer patients. (Thankfully, all of these arguments were disregarded by the court and release granted.) After BOP and DOJ could no longer hide the death and suffering during the prison COVID disaster, thousands of prisoners were released to supervised home confinement. These elderly and chronically ill releasees recidivated at the lowest rate in history, below 5%. There is no reason to believe that this would not again be the case if other aged and infirm prisoners were also released to the efficient supervision of the still-scandal-free US Department of Probation.

Here are just a few of the government-funded studies that have accurately documented the problem and suggested solutions-none of which have been followed. https://www.gao.gov/products/ggd-00-160r; https://www.cnn.com/2024/02/15/politics/bureau-of-prisons-inspector-general-report; Government Accountability Office, Better Planning and Evaluation Needed to Understand and Control Rising Inmate Health Care Costs (2017; . Office of the Inspector Gen., Evaluation of Issues Surrounding Inmate Deaths in Federal Bureau of Prison Institutions (2024); the list goes on and on.

Aside from Senators Charley Grassley of Iowa and Jon Ostroff of Georgia, Congress has failed in paying attention to this problem. The last time Congress showed a pulse of this issue was in 2024, when Senator Ostroff chaired a subcommittee that investigated BOP medical and sexual abuse, which morphed into the successful bipartisan effort to create an office of BOP Ombudsman (still unfilled and unfunded). WATCH: PSI Chairman Ossoff Unveils 8-Month Bipartisan Investigation into Sexual Abuse of Women in Federal Prisons   U.S. Senator for Georgia Jon Ossoff.

WATCH: PSI Chairman Ossoff Unveils 8-Month Bipartisan Investigation into...

All of this well-documented failure is certainly helpful in compassionate release filings based upon either serious untreated illness, or ignoring diagnosis of fatal illnesses. "The prisoners potentially eligible for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) who are serving "unusually long sentence[s]" with "gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed" are especially likely to become elderly and unhealthy or disabled in prison.2 U.S.S.G. § 1B1.13(b)(6) (Nov. 1, 2023). Intensive medical care for inmates consumes a

EXHIBIT A

CASE NO.

-----------------------------------------------------------------------------------------------------

disproportionate share of BOP's scarce resources, with well-documented, cascading effects on federal prison operations and the safety and security of BOP staff and inmates. Expanding access to compassionate release for inmates who can safely reenter the community by confirming that district courts can take changes in sentencing law into account when considering applications will alleviate one of the major challenges facing BOP, as the Sentencing Commission understood when it promulgated U.S.S.G. § 1B1.13(b)(6)." Nos. 24-820, 24-860, Rutherford and Carter v US, (US Supreme Court), Amicus Brief, August 14, 2025. We can assist with this process.

We are hearing of more and more complaints from institutions that Case Mangers still are not stacking their FSA and SCA benefits, or in the case of SCA-only prisoners, not granting them the full year that the statute permits. Has not the director made clear that the maximum placement is supposed to be made if the prisoner is eligible? We can assist with this.

From Alderson: "There is an outbreak of some type of bug bites that (causes) itching and leaving scabs after itching . The Medical here is saying it's nothing but dry skin or an allergic reaction and buy some ointment from commissary and get some lotion...They did a black light on a girl and the one nurse said to the other nurse to look at this and the other nurse said it's nothing " Of course it is

From fallout from the MAT program inadequacies: "I'm at the FCI Ray Brook. I'm an opioid addict and have been trying to get on the MAT program for over a year now to no avail. They tell me I have to be 90 days to the door then turn around and say they don't have the staff. It's in my PSR that I have SEVERE opioid abuse/disorder and have been to in-patient treatment twice. I was on Suboxone in the world to help me, I've relapsed twice in the past 5 years I've been down. I've done the BP8-9 and it has gone nowhere. I'm currently putting a sick call in every week to try and get the help I need," Where does that MAT Money go?

From the Director's home state of West Viriginia comes this eye-opening example of government waste and more: "The prison was appropriated $ 600,000 dollars to effect necessary repairs to all three housing units outside metal staircases due to an inmate falling down a section of it, due to rust, metal stress over the years etc.. Work began in June 2024 and concluded in July, 2025. The $$$ was to be use to hire an outside contractor to do the work. Instead, inmates did the work at about one dollar/hour. I asked (an officer) what happened to the 600 grand? He replied: 'I don't know about that part.' Where did that 600 grand go?"

"The food service ordered approx. 3,000 strawberry Danish as part of the inmate's breakfast meals in May, 2024. Ironically, just 2 months later in June 2024 the commissary made a prison wide announcement that inmates could purchase strawberry Danish for $ 1.50 each with no limit. Well needless to say, there were all sold within hours. Thats over $ 3000.00 The store brought it in. ??: Where did that $$$ go?  Secondly who moved the product from one dept. to another so it could be sold in the store? (Then food service) ordered approx. 4,000 ice cream sandwiches that were outdated when they were purchased (expired)- obviously got a good deal on them. He and other FS workers threw all of them in the trash claiming they were outdated. He knew that beforehand.

"According to BOP policy staff are to be served the same food as the inmates. That's word-for-word from the policy statement. (but the staff dining room) looks like a restaurant. We haven't had a chicken breast n over 9 months Staff had ice cream on a weekly basis. The inmates hadn't seen as much as an ice cream sandwich with a meal in over 1 year ." I promise that you have not heard the end of this story.

In Gonzalez v Herrera, No. 24-2371 (9th Cir. 2025) the petitioner, after being convicted of conspiracy to distribute controlled substances, was sentenced to 120 months in prison and five years of supervised release. While incarcerated, he participated in recidivism reduction programs and earned time credits under the First Step Act of 2018 (FSA). He continued to accrue these credits while on home confinement during the COVID-19 pandemic. Upon nearing the end of his custodial sentence, he sought to have his earned time credits applied to reduce both his remaining time in custody and the length of his supervised release. The Bureau of Prisons (BOP) applied some credits to end his custody early but refused to apply the remaining credits to reduce his supervised release, arguing that the FSA did not permit such use.

"The United States District Court for the Central District of California dismissed his habeas corpus petition, agreeing with the government that the FSA time credits could not be used to shorten the term of supervised release. The court found that the credits could only be applied to reduce time in custody, not supervised release, and thus denied the petitioner's request for relief.

"The United States Court of Appeals for the Ninth Circuit reviewed the case de novo. The Ninth Circuit held that the plain language of the FSA, as well as relevant canons of statutory construction, demonstrate that Congress intended for earned time credits to be applied toward reducing the length of supervised release, not just custodial time. The court reversed the district



EXHIBIT A

CASE NO.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

court's dismissal and remanded with instructions to grant the petition in part, direct the government to recalculate the petitioner's earned time credits, and provide the recalculation to his probation officer. The main holding is that, under the FSA, earned time credits may be used to reduce the term of supervised release."

METROPLEX MI 480

6 NOV 2025

DAMON L. RUCKER

NAME

44137 - 424

REG. NO.

FEDERAL CORRECTIONAL INSTITUTION

P.O. BOX 1000

MILAN, MICHIGAN 48160

RECEIVED

NOV 12 2025

CLERKS OFFICE
DETROIT

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
OFFICE OF THE CLERK
Theodore Levin United States Courthouse
231 WEST LAFAYETTE BLVD — ROOM 564
DETROIT, MICHIGAN 48226

48226-271839