UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **DAMON L. RUCKER**,<br><br>Plaintiff,<br><br>vs.<br><br>**ERIC RARDIN**,<br><br>Respondent. | **2:25-CV-10255-TBG-KGA**<br><br>HON. TERRENCE G. BERG<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS (ECF NO. 1), AND**<br><br>**DENYING PETITIONER'S MOTION TO CORRECT CALCULATION OF FSA TIME CREDIT (ECF NO. 16)** |

Damon Rucker is a federal inmate serving a 310-month sentence at FCI Milan, to be followed by an 8-year term of supervised release. Rucker was convicted in 2013 in the United States District Court for the Northern District of Illinois of attempted possession with intent to distribute cocaine under 21 U.S.C. § 846 and witness retaliation under 18 U.S.C. § 1513(b)(1).

Rucker filed this petition for writ of habeas corpus under 28 U.S.C. § 2241. Rucker asserts that the federal Bureau of Prisons ("BOP") incorrectly calculated his prerelease custody placement date by failing to prospectively award him credits under the First Step Act ("FSA"). He seeks an order compelling his transfer to prerelease custody at a date

1

earlier than that calculated by the BOP. For the reasons explained below, the Petition will be **DENIED**.

## I. BACKGROUND

To better understand Rucker's claim, the Court first very briefly outlines the federal statutory scheme pertaining to the ordinary custodial placement and progression of federal prisoners and how that progression has been impacted by the BOP's implementation of the FSA sentencing credit system.

Usually, a federal sentence includes a term of imprisonment followed by a term of "supervised release." *See* 18 U.S.C. § 3583(a). Between imprisonment and supervised release, however, a prisoner is often placed in an intermediate state of "prelease custody," during which he serves the last part of his custodial sentence in a setting other than a prison. *See* 18 U.S.C. § 3624(c)(1). Prerelease custody may be served at a community correctional facility, a halfway house, or home confinement. *Id.* § 3624(c). So, in the normal course of events, a prisoner serves the first part of his custodial sentence in a federal correctional facility, is eventually transferred to prerelease custody to serve the last part of his custodial sentence, and then finally he is released to the community and serves any additional period of supervised release imposed at the time of his sentence.

Among other reforms, the FSA created an alternative form of time credits for federal prisoners referred to as "Federal Time Credits" or

"FTCs." These credits are separate from ordinary good time credits. Eligible inmates who complete "evidence-based recidivism reduction programs" and other "productive activities" can earn FTCs. 18 U.S.C. § 3632(d)(4). Without getting into details not pertinent here, eligible inmates generally may earn 10 days of time credit (10 FTCs) for every 30 days of successful participation in programming or activities, and for certain prisoners the amount is increased to 15 days of time credit per 30 days. Each FTC earned is equivalent to one day of credit in reducing a prisoner's sentence. *See* 18 U.S.C. § 3632(d)(4)(A)(i)–(ii); 28 C.F.R. § 523.42(c)(2); *see also* BOP Program Statement 54010.01.

Critical to Rucker's claim is the statutory provision providing that FTCs are applied "toward time in prerelease custody or supervised release." 18 U.S.C. § 3632(d)(4)(C). The Court quotes the provision because the meaning of the term "toward" in the provision has been interpreted differently by various Courts.

Under 18 U.S.C. § 3624(g)(3), a maximum of 12-months of FTCs may be applied to reduce a prisoner's custodial sentence before his transfer to supervised release—effectively shortening the custodial portion of his sentence by one year. *See also* 28 C.F.R. § 523.44(d)(3). Any additional earned FTCs beyond those first 365 are applied by the BOP to advance the date of a prisoner's transfer to prerelease custody—the intermediate step forming the end of the custodial sentence. *See* 28 C.F.R. § 523.44(c).

3

Also central to Rucker's claim is a BOP Program Statement in which the BOP has interpreted these provisions to allow for a prisoner to continue to earn FTCs while in prerelease custody:

> As explained in Section 10(b), the Bureau will calculate an inmate's PRD [Projected Release Date] by assuming that an inmate will remain in earning status throughout his or her sentence, *including while in prerelease custody*. If an inmate on prerelease custody has already earned the maximum 365 days of credit toward supervised release, the PRD will be adjusted only if the inmate loses earned FTCs consistent with Section 9.

BOP P5410.01, §10(d), p. 17 (emphasis added).

With this background in mind, the Court turns to Rucker's situation. As of April 2, 2025, (the date of the latest information provided by Respondent), Rucker has already earned his maximum 365 FTCs which will be applied to shorten his custodial sentence and advance the start his term of supervised release. Rucker has also earned an additional 730 FTCs that have been applied to advance the date of his transfer to prerelease custody. *See* Declaration of M. Burnett, ECF No. 8-1, PageID.115–16. Based on his earned credits, the BOP calculated Rucker's projected release date (the expiration of his custodial sentence and the start of his supervised release) to be July 30, 2033. *Id.* PageID.116.

Rucker claims this calculation is incorrect and contrary to Program Statement 5410.01 because it does not account for the FTCs he will earn while in prerelease custody. ECF No. 1, PageID.11–16. Rucker notes that

4

the Program Statement indicates that the BOP calculation is supposed to assume that an inmate will remain in earning status throughout his sentence, including time spent in prerelease custody. Rucker notes that he will be transferred to prerelease custody with 1495 days left on his sentence under the current BOP calculation. *Id*. PageID.16. Rucker asserts that during those 1495 days spent in prerelease custody, he will earn an additional 735 FTCs (1495 days / 30 = 49.8 thirty-day periods, and 49 thirty-day periods x 15 FTCs per period = 735 FTCs). But since his discharge to supervised release will already have been credited by the maximum of 1 year of FTCs, those additional 735 FTCs cannot be used to provide him with any benefit. *Id*.

The only way Rucker sees to reconcile Program Statement 5410.01 with the FSA is for the BOP to calculate the FTCs that he will be eligible to earn while in prelease custody and then prospectively apply those yet-to-be-awarded FTCs to advance the date he is transferred to prerelease custody. Under such a calculation, Rucker claims that he should be eligible for prerelease custody on December 9, 2025. *Id*. PageID.15.

Respondent counters with an obvious objection: Rucker's proposed solution awards him with FTCs he has not yet earned and may never earn. Respondent notes that the statute expressly prohibits this because it provides that only credits that have already been "earned" can be "applied." 18 U.S.C. § 3632(d)(4)(C). Respondent seems to concede, however, that FTCs earned during Rucker's prerelease custody will

5

provide no benefit to him because he already has earned the maximum 365 FTCs that can be applied to shorten his custodial sentence and advance the start date of his supervised release. ECF No. 8, PageID.107–08.

Respondent also asserts that Rucker has at most shown that the BOP violated its own Program Statement, and that Program Statements do not create rights enforceable on habeas corpus. *Id.* PageID.108.

## II. DISCUSSION

A petition for writ of habeas corpus filed by a federal inmate under 28 U.S.C. § 2241 is proper where the inmate is challenging the manner in which their sentence is being executed. *Capaldi v. Pontesso*, 135 F.3d 1122, 1123 (6th Cir. 1998). Among other things, a § 2241 habeas petitioner must show that he is being held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). This includes a challenge to the calculation of sentencing credits. *See Hernandez v. Lamanna*, 16 F. App'x 317, 320 (6th Cir. 2001). The Court finds Rucker's habeas petition is therefore properly brought under § 2241.

Having carefully considered Rucker's arguments, the Court finds three reasons that preclude Rucker from establishing that he is entitled to habeas relief under § 2241.

*First*, Rucker's claim at bottom asserts that BOP policy—properly interpreted—requires it to prospectively apply FTCs that *may be earned*

6

during prerelease custody to advance the date of his release to prerelease custody. But "[a] habeas claim cannot be sustained based solely upon the BOP's purported violation of its own program statement because noncompliance with a BOP program statement is not a violation of federal law." *Reeb v. Thomas*, 636 F.3d 1224, 1227 (9th Cir. 2011); *see also Ogunlana v. Hemingway*, No. 2:21-CV-13060, 2022 WL 4359546, at *2 (E.D. Mich. Sept. 20, 2022) (Roberts, J.) (same) (citing *Reeb*, 636 F.3d at 1227); *Dalke v. Terris*, No. 16-CV-11165, 2017 WL 1315717, at *4 (E.D. Mich. Apr. 10, 2017) (Leitman, J.) (same). The BOP's Program Statements are "merely internal interpretive rules … and do not create enforceable rights or obligations." *Mohamed v. Streeval*, No. CV 0: 19-32-HRW, 2019 WL 2163592, at *3 (E.D. Ky. May 17, 2019) (citing *Reno v. Koray*, 515 U.S. 50, 61 (1995)). Rucker's claim that the BOP failed to comply with Program Statement 5410.01 therefore cannot provide the basis for granting habeas relief.

*Second*, the statute makes clear that only "earned" FTCs can be "applied." *See* 18 U.S.C. § 3632(d)(4)(C). FTCs that Rucker may or may not earn in the future during prerelease custody have not yet been "earned." It cannot be known whether Rucker will avail himself of the necessary programing or activities while on prerelease custody. It is also possible that Rucker could violate some rules and lose FTCs earned during prerelease custody as a sanction. Until Rucker actually earns those FTCs during prerelease custody, federal law prohibits the BOP

7

from applying them. Rucker therefore cannot show that he is being held in custody in violation of federal law on account of the BOP's failure to prospectively apply FTCs that have not yet been earned. *See Cox v. Rardin*, No. 2:24-cv-10676, 2025 WL 495342, at *5 (E.D. Mich. Feb. 13, 2025) (McMillion, J.) (stating that "the statute makes clear that only *earned* FTCs can be applied" and that "the BOP cannot rely on its projection of future earned credits when applying FTCs because there is no guarantee that an inmate will actually earn those credits").

*Third*, and most interestingly, the premise on which Rucker bases his claim (and one that Respondent seems to agree with)—that FTCs earned during prerelease custody will not provide any benefit to him—may prove to be incorrect. As the Court highlighted above, the applicable statute provides that FTCs shall be applied "toward time in prerelease custody or supervised release." 18 U.S.C. § 3632(d)(4)(C).

Courts have taken different positions on the question of how the word "toward" in this provision should be interpreted:

> Divergent interpretations of this language have led litigants and courts to opposing conclusions concerning its effect. Some courts have reasoned that "[a]pplying credits toward something ordinarily means reducing that thing," and therefore the FSA "allows credits to be applied to reduce a term of (i.e., 'time in') … supervised release[.]" *Rivera-Perez v. Stover*, 757 F. Supp. 3d 204, 211–12 (D. Conn. 2024); *see also Dyer v. Fulgam*, 21-CV-299, 2022 U.S. Dist. LEXIS 91170, 2022 WL 1598249, at *3 (E.D. Tenn. May 20, 2022). Others have held that to apply earned time credits "toward time in … supervised release" means to "bring an inmate closer to …

> supervised release by reducing their time in prison." *United States v. Doost*, 22-CR-4466, 2024 U.S. Dist. LEXIS 83262, 2024 WL 2064062, at *3–4 (N.D. Cal. May 7, 2024). Under their reasoning, earned time credits can shorten a custodial sentence and no more. *Id.*; *see also Guerriero v. Miami RRM*, 24-10337, 2024 U.S. App. LEXIS 11114, 2024 WL 2017730, at *2 (11th Cir. May 7, 2024) (per curiam); *United States v. Calabrese*, 11-CR-437, 2023 U.S. Dist. LEXIS 24259, 2023 WL 1969753, at *2-4 (N.D. Ohio Feb. 13, 2023).

*Gonzalez v. Herrera*, 151 F.4th 1076, 1081 (9th Cir. 2025).

In *Gonzalez*, the Ninth Circuit held that leftover FTCs (those remaining after the first 365 have been used to advance the date of supervised release) can be applied to reduce the actual length of the term of supervised release. *Id.* at 1089. However, the Sixth Circuit recently held to the contrary in a published opinion that "First Step Act time credits under § 3632(d)(4)(C) can be used to reduce a prison term but not a supervised-release term." *Hargrove v. Healy*, 155 F.4th 530, 536 (6th Cir. 2025) ("This language [in § 3624(g)] makes clear that when a prisoner earns time credits 'toward' supervised release, he is moving 'in the direction' of supervised release; the credits are not in partial fulfillment of his supervised-release term.").

Under the holding in *Gonzalez*, the position held by Rucker and Respondent, that the FTCs earned during prelease custody will not benefit Rucker, would be incorrect. Rucker's proposed solution of prospectively applying FTCs yet to be earned to advance the date of prerelease custody would not be the only way to benefit from FTCs he

9

earns during prerelease custody. Rather, the FTCs earned during prerelease custody could be used to shorten the length of his eight-year term of supervised release. But under the Sixth Circuit's recent decision in *Hargrove*, which this Court must follow, Rucker is correct that the FTCs he earns during prerelease custody will not benefit him.[1]

Because this issue has been working its way through the federal courts and different federal courts of appeal have reached different conclusions, it is a question that could possibly be addressed by the Supreme Court before the conclusion of Rucker's term of supervised release.

## IV. CONCLUSION

Accordingly, the Petition for Writ of Habeas Corpus, ECF No. 1, is **DENIED WITH PREJUDICE**. Further, Rucker's Motion to Correct Calculation of FSA Time Credit, ECF No. 16, is also **DENIED.** Because

---

[1] On November 12, 2025, Rucker filed a Motion to Correct Calculation of FSA Time Credit, ECF No. 16, asserting that under the Ninth Circuit's opinion in *Gonzalez v. Herrera*, 151 F.4th 1076 (9th Cir. 2025), he is entitled to earn FTC credits while he is in prerelease custody, and that those credits can be used to shorten his custodial term and/or his term of supervised release. As explained above, Rucker has not yet earned any FTC credits while in prerelease custody, and so those potentially earned credits cannot yet be applied. Moreover, as stated above and contrary to *Gonzalez*, the Sixth Circuit recently held in *Hargrove v. Healy*, 155 F.4th 530, 536 (6th Cir. 2025) that "First Step Act time credits under § 3632(d)(4)(C) can be used to reduce a prison term but not a supervised-release term." Rucker's motion, ECF No. 16, therefor will be **DENIED**.

a certificate of appealability is not needed to appeal the denial of a habeas petition filed under § 2241, *Witham v. United States*, 355 F.3d 501, 504 (6th Cir. 2004), Rucker need not apply for one before filing an appeal.

Given the ongoing dispute regarding the interpretation of 18 U.S.C. § 3632(d)(4)(C), the Court **GRANTS** Rucker leave to appeal in forma pauperis because any appeal would be taken in good faith. *See Foster v. Ludwick*, 208 F. Supp. 2d 750, 765 (E.D. Mich. 2002).

**IT IS SO ORDERED.**

Dated: November 21, 2025   /s/Terrence G. Berg
                           HON. TERRENCE G. BERG
                           UNITED STATES DISTRICT

a certificate of appealability is not needed to appeal the denial of a habeas petition filed under § 2241, *Witham v. United States*, 355 F.3d 501, 504 (6th Cir. 2004), Rucker need not apply for one before filing an appeal.

Given the ongoing dispute regarding the interpretation of 18 U.S.C. § 3632(d)(4)(C), the Court **GRANTS** Rucker leave to appeal in forma pauperis because any appeal would be taken in good faith. *See Foster v. Ludwick*, 208 F. Supp. 2d 750, 765 (E.D. Mich. 2002).

**IT IS SO ORDERED.**

Dated: November 21, 2025    /s/Terrence G. Berg
                            HON. TERRENCE G. BERG
                            UNITED STATES DISTRICT